Bigger, J.
Tbis submission is upon a motion of the defendants to vacate a temporary injunction heretofore granted by another branch of this court. The action is brought by the plaintiff as a tax-payer to restrain the publication of an ordinance recently passed by the council of the city of Columbus, which by its terms provides that no person shall be permitted, either as motorman or conductor, to have charge of the operation of street or interurban cars in the city of Columbus until after they shall have had at *162 least ten days’ instruction on said cars within said city, and providing a penalty for violation of the ordinance.
No question is made on the part of the defendants as to the right of the plaintiff to maintain such action. The right seems to'be clear under the statute.
It is the claim of the plaintiff, first, that the city of Columbus has no power to enact such a penal ordinance; and, second, that if such power exists, the ordinance is unconstitutional because arbitrary and -unreasonable.
" In logical order the first question to be determined is the question of the power of the city to pass such an ordinance. The right of the state Legislature to enact laws is conferred by the Constitution of the state. The legislative power of the state is by the Constitution nested in the General Assembly. This embraces every power of legislation which could be conferred, subject only to the limitation contained in the Federal Constitution and in the state Constitution itself. When, therefore,-the ■question arises as to the power of the state Legislature to enact á law, the question is, has the power to enact such a law been .clearly prohibited by the Constitution? On- the other hand, municipal corporations possess only such powers of legislation as are expressly granted or clearly implied, and none other; and'when the question arises as to the power of a municipal corporation to legislate upon a given subject, the question is not whether such exercise of legislative power has been clearly prohibited ; but has it been expressly granted, or is it to be clearly implied as necessary to carry out the express grant of power. And all doubtful claims are to be resolved against the existence of the power.
The Supreme Court of .this state has announced the rule in Ravenna v. The Pennsylvania Co., 45 O. S., 118, in this language :
■ “. Municipal corporations in their public capacity possess such powers and such only as are expressly granted by statute, and such as- may be implied as essential to carry into effect those which are granted.”
This principle applies to all grants of -power to‘.legislate as ■well-to the exercise of legislation under the police power 'as to *163 any other. This was expressly decided by the Supreme Court in the ease of Townsend v. City of Circleville, 78 O. S., 122, in this language:
“Municipal corporations in Ohio have only such police power as is expressly granted or clearly implied.”
These decisions of the Supreme Court clearly settle the question in this state whatever may be the rule in other states as to the possession of power by municipalities to legislate under the general police power of our state. In Ohio they have only such powers as are expressly granted and such as are necessary to carry out the granted powers. Decisions in other states, therefore, it is clear can be of little or no value in the solution of the question here presented as the existence of the power of municipal councils in Ohio must be determined from a consideration of the statutes of this state.
It is the contention of the defendants that this grant of power is to be found in Section 9113 of the General Code, which is a section of thb chapter on street and interurban railways, and in Section 3714 of the General Code. .
Section 9113 is in this language:
“Council or the commissioners, as the case may be, may fix the terms and conditions upon which such railways may be constructed, operated, extended and consolidated.”
This clearly refers only to the granting of franchises by contract and not to legislation under the police power. This is manifest from the fact that it applies as well to county commissioners, who have no powers of legislation whatever as to municipal council. The only grant of legislative power contained in the entire chapter on street and interurban railways is found in Section 9123, which does expressly confer the right upon municipal councils to require the owners of street railways operated by other power than horses and mules to place watchmen at the crossings which the council deems dangerous, and expressly provides that the council may enforce such ordinance by penalty.
The power here sought to be exercised by the city council is to prescribe the qualifications of the employes of.the street rail *164 way company. This grant of power’ certainly can not be' found in a provision which manifestly relates only to the grant of franchises by contract. Such grant of power as has been said must be clear and 'all doubtful claims must be resolved against it.
There is in this section relating to contract grants of franchises by councils and boards of county commissioners certainly no express grant of power to regulate by ordinance the employment of motormen and conductors upon street and interurban cars. Furthermore, this entire chapter being enacted at the same time by the General Assembly and upon the same subject must be construed together in arriving at a proper construction of its several provisions. If this section contained the general grant of power to legislate which is claimed for it, what was the purpose of the Legislature in providing in the same chapter, in Section 9123, that a municipal council might by ordinance require the owners of street railways to station watchmen at crossings deemed dangerous and to enforce such ordinance by penalties? If the council had already been given general powers to legislate with reference to the regulation, of the operation of street railways in Section 9113, then this provision was useless because already covered by this grant of power.
These considerations lead irresistibly to the conclusion that not even a doubtful claim of such grant of power can be found in Section 9113 of the General Code.
The other section relied upon as containing this grant of power is Section 3714 of the General Code. It is in this language:
“Muneipal corporations shall have special power to regulate the use of the streets to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, alleys, sidewalks, public grounds, bridges, acqueducts and viaducts within the corporation, and shall cause them to be kept open, in repair and free from nuisance.”
Title XII of the General Code relates to municipal corporations. This title contains six divisions. The second of these divisions containing a single chapter relates to the general powers of municipal corporations. The third division, containing six *165 chapters, relates to the special powers of municipal corporations. The second section of the chapter on the subject of the general powers of municipal corporations provides that all municipal corporations shall have the general power mentioned .in this chapter and council may provide by ordinance or resolution for the exercise and enforcement of them. Under the third division relating to the special powers of municipal corporations chapter three relates to “streets and public grounds.” The first section of this chapter, Section 3714, is that upon which counsel for the defendant relies as containing this grant of power and which has been quoted, supra. It will be observed that the Legislature in its grant of powers to municipal corporations has divided them into two classes, first, general powers, and, second, special powers. It will be observed further that it has made a different provision with reference to the exercise of these powers by municipalities. The general powers granted are to be exercised as the council may provide by ordinace or resolution. Not so with reference to the special powers granted. They are to be exercised in the manner provided by law. That is, the municipal council in so far as its general powers are concerned may exercise them in any manner it may in its discretion determine, so long, of course, as it does not contravene any constitutional guaranty or law of the state. But when it comes to the exercise of its special powers, they must be exercised, ‘ ‘ as provided by law. ’ ’ That is, we must look to the statutes of the state for the manner of the exercise of these special powers, while the .only restriction upon the exercise of the general powers conferred is that it shall not contravene the Constitution or laws of the state.
. Section 3632, being one of the sections of the chapter conferring general powers upon corporations, provides that municipal corporations shall have general power to regulate the use of carts, drays, wagons, hackney coaches,- omnibuses, automobiles, and every description of carriages kept for hire or livery stable purposes, * * * and to regulate the speed of interurban, traction and street railway cars within the corporation.
Section 3643 provides that municipal corporations shall have general power to require the employment of conductors on all *166 street ears within the corporate limits. These are the only general powers of legislation as to the regulation of street railway companies granted to municipalities. Municipal councils are authorized to. pass ordinances regulating the speed of cars and also requiring street railway companies to station watchmen at crossings which the council deems dangerous.
Section 3714 does not confer general power upon the subject of the regulation of the use of the streets. This is apparent, first, from the consideration that it is found in division three, chapter three, of this title, which only confers special powers upon municipal councils and which powers .can only be exercised as provided by law. If it had been the legislative intention to confer general power upon the subject, it would have been included in division two of this title which confers general powers.
Second. This is further apparent from .a consideration that it 'only authorizes by its terms municipal councils to regulate the use of the streets in the manner provided by law. These considerations clearly negative the claim that any such general'grant of power is to be found in the opening sentence of this section. Is it to be found in the further provision of this section in this language: “The council shall have the care, supervision and control of public highways, streets, alleys, sidewalks, public grounds, bridges, acqueducts and viaducts within the corporation, and shall cause them to be kept open, in repair and free from nuisance ? ’ ’
This provision in this exact language has been the law of this state since 1869, Vol. 66 O. L. The only change that has been made in it is the addition of the words, “acqueducts and viaducts.” It was, therefore, the law of the state when the Supreme Court decided the case of Ravenna v. Pennsylvania Co., supra, and when the Circuit Court of Hamilton County decided the ease of Thornhill v. Cincinnati, 4 C. C., 354.
In the case of Ravenna v. Penna. Co., the Supreme Court decided that “a municipal corporation has not the power by ordinance to compel a railroad company to maintain at a street crossing within the corporate limits a watchman for the pur *167 pose of giving warning to passersby of the approach- of trains. In the case of Thornhill v. Cincinnati, the Circuit Court of Hamilton County decided that municipal councils had no power to require,, by penal ordinance, the employment of conductors on street cars. In neither of -these eases was it even claimed that this gave power to municipal councils to regulate the operation of street cars or trains upon steam railroads. In both cases it was held that council could not exercise such power of legislation, because it had not been granted to them by act of the Legislature, and yet councils had whatever power is conferred by this language of Section 3714, then as now..
Since -the decision of the Hamilton -county case the Legislature has granted general power, to municipal .councils to require the employment -of conductors upon street cars, but it did not also grant -the power to prescribe their qualifications. It has also now granted special power to require street railway companies to station watchmen at dangerous crossings, but no power has yet been conferred to regulate street railway companies by prescribing the qualifications of their employes. That no such general powers, as claimed, are conferred by this section is evident further from the fact that the Legislature has made specific grant of certain powers of regulation over the operation of street railways to municipal councils. These are to regulate the speed of cars; to require conductors to be employed upon the cars, and to require watchmen to be stationed at dangerous crossings. Such specific grants would be entirely useless and unnecessary if there had been such general grant of power. All powers' of regulation not granted belong to the state Legislature and can be exercised only by the General Assembly, and this power of regulation the state Legislature has exercised. In the chapter on street and interurban railways, which grants by Section 9123 the special power to municipal councils to require watchmen at crossings, the Legislature itself enacts, in -the very next section — Section 9124 — a regulation under the police power inherent in it, for the safety of the public by requiring all electric street .cars -to stop at crossings of other electric street railways, and in the next sec *168 tion that all street cars shall stop before crossing the tracks of a steam railway. Whether such a power as that sought to be exercised by the passage of this ordinance should be conferred upon municipal councils is a question which addresses itself to the General Assembly, and not to the courts. The only question here is, has the General Assembly conferred this power of regulation upon municipal councils.
For the reasons stated, it seems not only doubtful as to whether such power has been granted but, under the decisions of the Supreme Court and circuit court of the state, and the statute law, clear that it has not been granted. This makes it unnecessary to consider the further question of the constitutionality of this ordinance; the council having no power to enact it, it is needless to consider whether if it had, it would be vadid; and the courts never rest decisions upon that ground when the matter can be disposed of upon any other. Ireland v. Palestine, 19 O. S., 369-373.
For the foregoing reasons, the motion of the defendants to vacate the temporary injunction heretofore granted must be overruled.